STATE OF NORTH CAROLINA v. LAWRENCE BROWN, JR.

No. 853SC1265

(Filed 1 July 1986)

1. **Criminal Law § 34.5— evidence of defendant's guilt of other offense—admissibility to show identity**

   In a prosecution of defendant for burglary, felonious larceny, and felonious possession of stolen property where the evidence tended to show that defendant stole a safe, opened it, and removed the contents, the trial court did not err in allowing into evidence testimony regarding another burglary and safecracking incident, since the circumstances of the two safecracking incidents were so similar as to tend to show that the crime charged and the other offense were committed by the same person.

State v. Brown

2. **Larceny § 7.4— possession of stolen property—sufficiency of evidence**

Evidence of felonious possession of stolen goods was sufficient to be submitted to the jury where it tended to show that a van fitting the description of defendant's van was seen within 325 feet of the victim's home on the night his safe was stolen; a man generally fitting the description of defendant was seen driving the van; paint sample evidence indicated that the safe had been in defendant's van; the safe was found in a wooded area near the home of defendant's girlfriend; the underside of defendant's van contained tree fragments; testimony indicated that defendant stole a second safe from a home at night, took it to a wooded area, and opened it by peeling away the faceplate in the same manner in which the safe in this case had been opened; another person testified that defendant had admitted to the crimes with which defendant was charged in this case; and in the week following the larceny of the safe and its contents, primarily $100 bills, defendant spent cash totalling in excess of $4,500, most of it in denominations of $100 bills.

APPEAL by defendant from *Phillips (Herbert O., III), Judge.* Judgment entered 22 July 1985 in Superior Court, PITT County. Heard in the Court of Appeals 15 April 1986.

Defendant was charged in a proper bill of indictment with second degree burglary, felonious larceny, and felonious possession of stolen property. At trial, the State presented evidence which tended to show the following facts. Lyman Harris and his wife, Mary Edna Harris, resided on Route 1, Winterville, North Carolina. The utility room of the house contained a cabinet with closing doors which enclosed a safe. The safe contained among other things approximately $27,000 in cash—$26,000 in one hundred dollar bills and the rest in smaller denominations.

On 20 November 1984, defendant's father, a Terminix employee, came to the Harris home to spray for roaches and bugs. During this call, defendant's father opened the cabinet containing the safe, and sprayed inside the cabinet and around the safe. On 10 December 1984, defendant accompanied his father on a return call to do more spraying. The cabinet containing the safe was in plain view of defendant, though the safe could be seen only if the cabinet doors were open.

On 2 January 1985, Lyman Harris left his home at approximately 5:00 p.m. to visit his wife in the hospital and returned at approximately 9:30 p.m. Upon returning home, he found that someone had broken into the house and removed the safe and its contents. On this same night, Sidney Harris and his wife, Frances Harris, observed a light blue Ford van parked on the side of the

road approximately 325 feet from the Lyman Harris home between 7:20 p.m. and 8:10 p.m. The van had chrome wheels, no side panel windows on the driver's side, and two windows in the back doors of the van. A van matching this description is registered to Larry Brown Carpet Installation, defendant's self-owned business. Furthermore, Frances Harris observed the driver of this van at an intersection about a mile from the Lyman Harris home. This driver appeared to be a white male, in his twenties, with a pointed nose, dark hair, and what looked like a beard. This description generally matches that of defendant.

On 5 January 1985, the safe was found in a wooded area in Greenville, approximately 2,300 feet from Cemetery Road on which defendant's girlfriend lives and where defendant often stayed.

Investigators took paint and rust samples from the safe, the inside of the van, the bumper of the van, and the van's bolt hitch. Investigators also took various paint and rust samples and samples of chipped pieces of brick from the Harris residence. Wood samples were also collected from the wooded area in which the safe was found, and from underneath defendant's van.

Patricia Harrell, a forensic chemist with the State Bureau of Investigation (SBI), performed a chemical analysis of the paint and rust chips from the Harris residence, from the van, and from the safe. She concluded that the paint and rust samples from all three places were the same. William E. Pierce, another forensic chemist with the SBI, could not show a relationship between the pieces of chipped brick found on the van's bolt hitch with chipped brick from the Harrises' front porch due to an insufficient amount of material found on the bolt hitch. Furthermore, Elizabeth Wheeler, an expert in wood anatomy, concluded that the wood samples found under the van were from oak, sweet gum, and other hardwood trees similar to those trees in the area where the safe was found. However, due to the nature of the science, she could not conclusively state that these samples were from the very trees in that wooded area.

Finally, defendant engaged in several financial transactions between 3 January 1985 and 9 January 1985 in which he spent cash totalling in excess of $4,500, primarily in denominations of one hundred dollar bills.

Defendant presented evidence which tended to show that he and his parents were at a shopping mall from approximately 6:00 p.m. to 8:30 p.m. on 2 January 1985. After arriving home, defendant then drove to his girlfriend's house in his black Dodge Daytona, and there watched television until he left around 10:30 p.m.

Following the close of the State's evidence and again at the close of all evidence, defendant moved to have all charges dismissed. The trial court denied the motions. Defendant was found guilty of felonious possession of stolen goods. From a judgment imposing a ten-year term of imprisonment, defendant appeals.

*Attorney General Lacy H. Thornburg, by Associate Attorney General Abraham Penn Jones, for the State.*

*Appellate Defender Malcolm Ray Hunter, Jr., by Assistant Appellate Defender Leland Q. Towns, for defendant appellant.*

ARNOLD, Judge.

[1] Defendant contends the trial court erred in allowing into evidence testimony regarding another burglary and safecracking incident in Craven County because this testimony constituted evidence of a distinct and unrelated crime, violated due process, and denied defendant a fair trial. We do not agree.

The general rule in North Carolina is that evidence of other crimes is inadmissible on the issue of guilt if its only relevance is to show defendant's bad character or disposition to commit an offense similar to the one charged. *State v. Weldon*, 314 N.C. 401, 333 S.E. 2d 701 (1985). This general rule prohibiting the admission of evidence of "other crimes" does have exceptions, however. Rule 404(b) of the North Carolina Rules of Evidence provides:

> *Other Crimes, Wrongs, or Acts.* Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show that he acted in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake, entrapment or accident.

Johnny Evans testified that about one month before the trial, he and defendant entered a house in Craven County, removed a

safe, and took it to a wooded area. Defendant took a sledgehammer and hit the combination dial and handle until they were removed. Defendant then used a tapered iron stake to open the face of the safe. Using a crowbar, defendant next peeled back the faceplate to reveal the concrete underneath. Defendant broke away the concrete allowing the removal of an underlying plate and entrance into the safe. Evans also testified that while engaged in opening this safe, defendant confessed to the charges pending against defendant in this case.

Evans's statement concerning defendant's confession is admissible as a hearsay exception under Rule 801(d) of the North Carolina Rules of Evidence, as an admission by a party-opponent. Evans's testimony as to defendant's method and manner used in opening this safe in Craven County is admissible under Rule 404(b) to show identity.

> If . . . evidence tends to identify the accused as the perpetrator of the crime charged it is admissible notwithstanding that it also shows defendant guilty of another criminal offense. "Where the accused is not definitely identified as the perpetrator of the crime charged and the circumstances tend to show that the crime charged and another offense were committed by the same person, evidence that the accused committed the other offense is admissible to identify him as the perpetrator of the crime charged."

*State v. Freeman*, 303 N.C. 299, 301-02, 278 S.E. 2d 207, 208 (1981), *quoting State v. McClain*, 240 N.C. 171, 175, 81 S.E. 2d 364, 367 (1954). In the instant case, defendant relied upon a defense of alibi, thus putting his identity in issue. *State v. Thomas*, 310 N.C. 369, 312 S.E. 2d 458 (1984). The remaining question is thus whether the circumstances of the two safecracking incidents were so similar as to tend to show that the crime charged and the second offense were committed by the same person. *Id.*

Experts testified at trial that the method of peeling back the faceplate to gain entry into the safe as described in the testimony of Johnny Evans was also the method used to gain entry into Lyman Harris's safe. We find that the two instances of safecracking are sufficiently similar as to provide a reasonable inference that the same person committed both offenses. *See id.* We conclude, therefore, that there was no error in the admission of

Johnny Evans's testimony as substantive evidence of defendant's guilt.

[2]   Defendant also contends that the trial court erred in failing to dismiss the charge of felonious possession of stolen goods because the evidence was insufficient as a matter of law to establish defendant's guilt beyond a reasonable doubt. We do not agree.

In order to sustain the conviction of felonious possession of stolen goods as per the indictment, the State must establish the following elements:

(1) Possession of personal property;

(2) Which has been stolen pursuant to a burglary;

(3) The possessor knowing or having reasonable grounds to believe the property to have been stolen pursuant to a burglary; and

(4) The possessor acting with a dishonest purpose.

G.S. 14-72(c); *see also State v. Perry*, 305 N.C. 225, 287 S.E. 2d 810 (1982). Upon a motion to dismiss in a criminal action, the evidence must be considered .by the trial judge in the light most favorable to the State, giving the State the benefit of every reasonable inference that might be drawn therefrom. *State v. Brown*, 310 N.C. 563, 313 S.E. 2d 585 (1984). Any contradictions or discrepancies in the evidence are for resolution by the jury. *Id.* The trial judge must decide whether there is substantial evidence of each element of the offense charged. Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *Id.*

The evidence in the instant case indicates that a van fitting the description of defendant's van was seen within 325 feet of the Harris residence on the night the safe was stolen. A man generally fitting the description of defendant was seen driving this van. Paint sample evidence indicates that Lyman Harris's safe had been in defendant's van. The van bolt hitch contained brick dust, and the Harrises' brick porch had been recently chipped. The safe was found in a wooded area near the home of defendant's girlfriend. The underside of defendant's van contained tree fragments. Testimony indicated defendant stole a second safe from a

home at night, took it to a wooded area, and opened it by peeling away the faceplate in the same manner in which Lyman Harris's safe had been opened. Johnny Evans testified that defendant had admitted to the crimes with which defendant was charged in this case. Furthermore, in the week following the burglary of the Harris safe and its contents, defendant spent cash totalling in excess of $4,500, primarily in denominations of one hundred dollar bills. We believe this evidence is sufficient to establish substantial evidence of each element of the charge of felonious possession of stolen property.

For the reasons set forth above, we find

No error.

Judges WHICHARD and JOHNSON concur.